IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>NEW CASTLE INVESTMENT, LLC,<br><br>Debtor. | Chapter 7 Proceedings<br><br>Case No. 09-bk-01329<br><br>Adv. No. 10-ap-02327 |
| DAVID A. BIRDSELL,<br><br>Plaintiff,<br>v.<br><br>MGF FUNDING, INC.,<br><br>Defendant. | MEMORANDUM DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT |

I. INTRODUCTION

This matter comes before the Court on a "Motion for Summary Judgment" (the "Motion") filed by the Defendant on September 15, 2011, a "Response and Cross-Motion for Summary Judgment" (the "Cross-Motion") filed by the Plaintiff on October 19, 2011, and responses and replies thereto. On January 26, 2012, the Court held oral argument on the Motion and Cross- Motion. At the conclusion of the hearing, the Court took the matter under advisement.

In this Memorandum Decision, the Court has now set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the <u>Rules of Bankruptcy Procedure</u>. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C.

1

§§ 1334(b) and 157(b) (West 2011).

## II. FACTUAL BACKGROUND

On or around November 7, 2008, Tiffany & Bosco, P.C., acting as trustee, conducted a trustee's sale of certain real property of New Castle Investment, LLC (the "Debtor") commonly known as 14523 West Cortez Street, Surprise, Arizona 85379 (the "Property"). The trustee's sale was on behalf of Select Folio Services as beneficiary. At the sale, Mr. Clif Burgener ("Burgener"), either in an individual or representative capacity, submitted the successful bid of $158,000.

Once he had submitted his bid, Burgener contacted MGF Funding, Inc. (the "Defendant"). Burgener asked the Defendant to enter into an option arrangement whereby Defendant would purchase the Property in its own name and grant Burgener the option to re-purchase it for an agreed-upon fee. The Defendant claims it had previously entered into similar agreements with Burgener and others, and had done business with Burgener for over ten years. Defendant agreed to examine the Property and determine the amount it would be willing to contribute to the purchase price. After examining the Property, the Defendant agreed to pay $108,000. Burgener accepted the offer, and agreed to provide the remaining $50,000. The parties then executed the option agreement.[1]

At this time, Ms. Liliana Stoinova ("Stoinova"), the principal of the Debtor, shared an office with Burgener, and at least occasionally participated with him in real estate and other investments. The Defendant was aware that Stoinova and Burgener shared an office, and that they had participated together in business and real estate investments.

---

**1.** *See* Adv. Case No. 10-2327-SSC, Docket Entry No. 22, Exhibit. A. Although the Defendant only produced an unsigned option agreement, both the Defendant and Burgener affirm the existence of the agreement. Therefore, the agreement will be treated by this Court as valid despite the Statute of Frauds. See In re Circle K Corp., 124 F.3d 904 (9th Cir. 1997) (finding that lessor who was not a party to oral assignment of lease could not raise Statute of Frauds as a defense where parties to assignment did not dispute its validity) (citing 37 C.J.S. Statute of Frauds § 220 (1943)).

Case 2:10-ap-02327-SSC   Doc 45   Filed 02/21/12   Entered 02/21/12 14:36:25   Desc
Main Document    Page 2 of 10

On or around November 10, 2008, the Defendant paid $108,000 into a trust account being held in escrow by trustee Tiffany & Bosco to fund the purchase price (the "T&B Account"). The same day, the additional $50,000 was transferred into the T&B Account through three separate checks: a $30,000 cashier's check drawn on an account held by the Debtor, a $10,000 cashier's check drawn on an account held by Ngiri (an entity owned by Burgener), and another $10,000 cashier's check drawn on an account held by a Mr. Clark Buisker.

With the purchase price in place, Tiffany & Bosco, as trustee, completed the sale by transferring $158,000 to the beneficiary, and transferring title to the Property to the Defendant. Tiffany & Bosco executed a Trustee's Deed Upon Sale (the "Trustee's Deed"), listing the Defendant as purchaser.

The Defendant was not a creditor of the Debtor at the time of the sale, apparently undertook no obligation to the Debtor in exchange for the $30,000, and claims that it was not aware until a year after the sale that anyone but Burgener contributed to the purchase price.

After the sale, title to the Property remained in the Defendant's name. Burgener failed to exercise the option within the agreed-upon period,[2] and in 2009, the Defendant sold the Property to a third party. Defendant did not pay Burgener any portion of the proceeds from the 2009 sale of the Property.

The Debtor filed a Chapter 11 bankruptcy petition on January 27, 2009. The case was subsequently converted to Chapter 7 on May 16, 2011. The Court had appointed David A. Birdsell as the Chapter Trustee in the administrative case on February 19, 2009. The Trustee, as Plaintiff, filed the instant Adversary Complaint on December 23, 2010, seeking entry of an order avoiding the transfer of the $30,000, and ordering the Defendant to return that amount to the Debtor's bankruptcy estate, pursuant to 11 U.S.C. §§ 544, 548, and 550 (West 2011).

---

**2.** Defendant claims that a few days after the sale, Burgener met with a Mr. Matthews at a grocery store parking lot, and took $169,500 from him in exchange for a promise to deliver title to the Property within a few days. Burgener never transferred any funds to the Defendant and, thus, never obtained title to the Property.

3

## III. DISCUSSION

In its Motion for Summary Judgment, the Defendant argues that the Plaintiff is not entitled to recover from the Defendant as a matter of law. The Defendant argues that it is not a "transferee" under 11 U.S.C. § 550, and even if it were, MGF is not liable under any theory of recovery because it took for value without knowledge of the voidability of the transaction pursuant to 11 U.S.C. § 550(b). In their Response and Cross-Motion, the Plaintiff requests that the $30,000 transfer from the Debtor into the T & B Account be avoided pursuant to 11 U.S.C. §§ 544, 548 and A.R.S. § 44–1004. Specifically, the Plaintiff argues that the Debtor made the transfer while insolvent and for insufficient value, within two years prior to the petition date, and that the Defendant as the initial "transferee" exercised dominion over the Debtor's $30,000 when the Defendant used it to purchase the Property.

The Court finds that based upon the facts presented and Ninth Circuit authority, the transfer of $30,000 from the Debtor's account is avoidable under 11 U.S.C. §§ 544(b), 548(a) and A.R.S. § 44–1004. However, the Court finds that an issue of material fact exists as to whether the Plaintiff may recover the Debtor's money from the Defendant pursuant to § 550(a), such that the Court must deny both the Motion for Summary Judgment and the Cross-Motion thereon.

### A. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted if the movant has shown that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c). Ruling on a motion for summary judgment necessarily implicates that substantive evidentiary standard of proof which would apply at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. Procedurally, "the proponent of a summary judgment motion bears a heavy burden to show that there are no

4

disputed facts warranting disposition of the case on the law without trial." In re Aquaslide 'N' Dive Corp., 85 B.R. 545, 547 (9th Cir. BAP 1987). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." Frederick S. Wyle P.C. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985).

The opponent may not assert the existence of some alleged factual dispute between the parties. Liberty Lobby, 477 U.S. 242 at 252. Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits that are based on personal knowledge, and the facts set forth therein must be admissible in evidence. Aquaslide, 85 B.R. at 547. In addition, summary judgment must be used with care and restraint, Hutchinson v. United States, 677 F.2d 1322, 1325 (9th Cir. 1982), and is reviewed in the light most favorable to the non-moving party. Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).

### B. THE TRANSFER FROM THE DEBTOR IS AVOIDABLE UNDER 11 U.S.C. §§ 544(b) and 548(a)(1)(B).

In order for a trustee to recover property or the value of same under 11 U.S.C.§ 550, the trustee must first avoid the transfer under 11 U.S.C.§§ 544, 547, 548, or state fraudulent conveyance law. The Trustee seeks to set aside the Debtor's pre-petition transfer of the $30,000 as fraudulent under 11 U.S.C. §§ 548(a)(1)(B) and 544(b). Pursuant to § 548(a)(1)(B), a trustee may avoid a transfer of property of the debtor made within two years of the debtor's bankruptcy if the debtor was either insolvent at the time of the transfer or was made insolvent thereby, and the debtor received less than "reasonably equivalent value" in exchange for the transfer. Section 544(b) allows a Trustee to avoid a transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable by a creditor of the Debtor under applicable state law. Applicable law in this case is the Arizona Uniform Fraudulent Transfer Act. *See* A.R.S. § 44-1001, *et seq*; In re Roca, 404 B.R. 531 (Bankr. D. Ariz. 2009). Pursuant to A.R.S. § 44-1004(A) a transfer is avoidable if the Debtor either makes such transfer with the intent to hinder, delay or defraud any creditor of the Debtor, or the Debtor received no value or less than reasonably equivalent value in exchange for a transfer of Debtor's property and the Debtor was

5

Case 2:10-ap-02327-SSC    Doc 45    Filed 02/21/12    Entered 02/21/12 14:36:25    Desc
Main Document    Page 5 of 10

insolvent on the date the transfer occurred, or became insolvent as a result of the transfer.

In the case at hand, the Debtor transferred $30,000 into a trust account held by Tiffany & Bosco. The Debtor had an interest in the $30,000 used by the Defendant to acquire the Cortez Property. The funds were transferred within two years prior to the petition date. The parties do not dispute that the Debtor was insolvent at the time of the transfer. Moreover, there is no evidence that the Debtor received any value in exchange for the transfer. Therefore, the Court concludes that the Trustee has met his burden under both Section 544 and 548 of the Bankruptcy code. Thus, the transfer was avoidable pursuant to §§ 548(a)(1)(B), 544(b), and A.R.S. § 44-1004(A). (West 2011).

### C. ALTHOUGH THE TRANSFER IS AVOIDABLE, MORE INFORMATION IS NEEDED TO DETERMINE WHETHER THE DEFENDANT IS A PARTY FROM WHICH THE PLAINTIFF IS ENTITLED TO RECOVER PURSUANT TO 11 U.S.C. §550(a).

The Trustee requests that the Court allow the estate to recover the value of the avoided $30,000 transfer. Upon finding that a Debtor has fraudulently transferred property, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the transferee. 11 U.S.C. § 550(a). Pursuant to § 550(a), to the extent a transfer is avoidable under § 548 or other avoidance sections, the trustee may recover for the estate the transferred property, or its value, from the "initial transferee" of such transfer, from "the entity for whose benefit the transfer was made" or from "any mediate or immediate transferee of such initial transferee." While recovery against a subsequent transferee is subject to § 550(b),[3] recovery against an initial transferee is absolute. Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195, 1197-1198 (9th Cir. 1997) (citation omitted). The remaining issue before the Court is whether the Defendant is, in fact, a

---

**3.** Section 550(b) provides that a trustee may not recover property from a subsequent transferee that received the property for value, in good faith, and without knowledge of the transfer's avoidability.

6

"transferee" for Section 550 purposes.[4]

The term "transferee" is not defined in the Bankruptcy Code. However, it has been defined by the Ninth Circuit as an entity that has "dominion over the money or other asset, the right to put the money to one's own purposes." Video Depot, 127 F.3d at 1198 (quoting In re Buillion Reserve of North America, 922 F.2d 544, 548 (9th Cir. 1991)). The presence of an agent intermediary is irrelevant in making the "initial transferee" determination. See Buillion Reserve. 922 F.2d at 548 ("When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded.") (quoting Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890, 895 (7th Cir. 1988)).

Here, the Defendant argues that only the beneficiary under the deed of trust could be the initial transferee of the Debtor's $30,000 transfer, because it is the first party that actually received the money. Defendant's argument is misplaced. A trustee's sale is a simultaneous transaction, meaning that the trustee serving under a deed of trust, may only extinguish the lien held by the beneficiary, if the trustee simultaneously transfers title to the real property to the purchaser that has paid the final bid price at the trustee's sale. Thus, the lender will not extinguish its lien unless it is paid the bid price at auction. If the purchase price at a trustee's sale is not paid by 5:00 pm the following day (essentially within 24 hours), the lien of the beneficiary under the deed of trust remains, and the trustee's sale is continued.[5] *See* A.R.S. § 33-811(A); Cf. In re Steiner, 251 B.R. 137 (Bankr. D. Ariz. 2000). Conversely, the purchaser will not pay its consideration unless it receives the promise of title to the property through prompt

---

**4.** It is possible that as the facts are developed by the Plaintiff, there may be a claim against the defendant under Section 550(b).

**5.** The trustee may also agree, in writing, to extend the time for payment, pursuant to A.R.S. § 33-811(B). In the case at hand, according to the pleadings, the sale took place on November 7, 2008, and payment was not made by the Defendant until November 10, 2008. It is unclear whether the trustee agreed in writing to extend the time for payment, whether the sale date in the pleadings was simply inaccurate, or whether some other factor caused the delay in payment.

7

execution and delivery of a trustee's deed upon sale. This is true because although the trustee has seven days to execute and deliver the deed upon sale (A.R.S. § 33-811(B)), the sale is deemed completed at the time the purchase price is paid; delivery of the deed upon sale is a mere "ministerial act." A.R.S. § 33-810(A); <u>Steiner</u>, 251 B.R. at 141. The trustee is a dual agent who may be disregarded in making the determination of which party is the initial transferee. The purchaser at a trustee's sale is arguably an initial transferee of funds from a third party, because through the trustee, as agent, the purchaser uses the funds to purchase the property. To the same effect, the beneficiary under a deed of trust may be an initial transferee of funds from a third party, because it receives, through the trustee as its agent, the consideration for conveying the property to the purchaser at the trustee's sale.

In the case at hand, on November 10, 2008, a check for $30,000 drawn on the Debtor's account was transferred into the T&B Account. The purpose of the transfer was to help fund the purchase of the Property at a Trustee's Sale conducted by T&B. Once the remainder of the purchase price was transferred into the same Account, the Defendant may have directed T&B, as trustee, to transfer the purchase price, including the Debtor's funds of $30,000, to the beneficiary, Select Folio Services. At that moment, the sale was completed under Arizona law, with the beneficiary simultaneously directing T&B to convey the Property to the Defendant.

The Defendant argues that it did not know, and had no way of knowing, the source of the $30,000. However, Burgener and the Defendant had a course of dealing whereby they purchased distressed properties at trustee's sales. Because of the course of dealing, the Defendant arguably knew that Burgener did not have the financial wherewithal to purchase the properties at trustee's sales. Moreover, the facts are unclear as to what happened at the Trustee's Sale of the Property. For instance, if Burgener bid at the Trustee's Sale, in his own name "or his nominee," *someone* must have communicated with T&B, the Trustee and agent, to advise T&B in whose name to place title to the Property in the preparation of the Trustee's Deed Upon Sale. Since title was placed in the Defendant's name, Burgener, the Defendant, or both of them may

8

have notified T&B of what action to take concerning the Trustee's Sale. That notification may have prompted T&B to advise the party so notifying it of the various funding sources for the purchase of the Property, including the transfer of $30,000 from the Debtor. Therefore, it is likely that either Burgener, at the Defendant's request, or the Defendant, contacted T&B to complete the documentation.

Because of these open issues as to what occurred at the Trustee's Sale and why T&B placed the Trustee's Deed Upon Sale in the Defendant's name, the Defendant's statement that it did not know where the money was coming from is self-serving and may be disregarded by the Court as being unreliable. See <u>California Architectural Bldg. Prods., Inc. v. Frabciscan Ceramics, Inc.</u>, 142 F.3d 1145 (9th Cir. 1987). The fact that the bankruptcy trustee did not submit a controverting affidavit is not necessarily dispositive as well. Party requesting summary must be entitled to judgment as a matter of fact and law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). This is particularly true in light of the fact that the Defendant knew that Burgener and Stoinova shared office space and had invested in real estate and other business ventures together. It also lacks credibility that the Defendant, as purchaser of the Property, would not inquire of T&B if the monies received from Burgener and other third parties had arrived and how much each had provided. If the Defendant knew the funds were coming from a number of third parties, yet knew that title was being placed solely in its name, the Defendant may have exercised sufficient dominion over the funds to be held liable as the initial transferee.[6]

On this record, the Court should review the Trustee's Sale records for the

---

**6.** An initial transferee may be under a duty of inquiry as to the receipt of funds. In the decision of <u>In re Video Depot</u>, 127 F.3d at 1199, the creditor received a cashier's check clearly purchased by the debtor which placed upon the creditor a duty of inquiry. In this matter, the receipt by T&B of the Debtor's funds, depending on the communications of T&B to one or more parties, may have placed a duty of inquiry on the Defendant. The Ninth Circuit also expressed concern about designating the principal of a debtor as the initial transferee in fraudulent transfer cases. Such a rule "gives too much power to an unscrupulous insider to effect a fraudulent transfer...without allowing a trustee to have the means for avoiding the transfer for the benefit of the debtor's creditors." <u>Id</u>. (citation omitted.)

9

Property and judge the credibility of the witnesses to determine what the Defendant did, or knew, and when. The Court will deny both the Motion for Summary Judgment and the Cross-Motion. The Court will take evidence at trial on the issue of whether the Defendant acted in a manner, or possessed the knowledge, sufficient to exercise dominion over the Debtor's $30,000, thus making the Defendant an initial transferee from which the Plaintiff may recover the $30,000 for the benefit of the bankruptcy estate under Section 550(a).

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that there are genuine issues of material fact that preclude entry of judgment at this time. Therefore, the Plaintiff's Cross-Motion for Summary Judgment and the Defendant's Motion for Summary Judgment are both DENIED. The Court will set a Rule 7016 scheduling conference in order to establish a date for trial on the issues outlined herein. The Court will execute an order incorporating this Decision.

DATED this 21st day of February, 2012.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge